# In the United States Court of Federal Claims

No. 10-457C
(Filed September 16, 2010) 1/

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * | * Pre-award bid protest; 28 U.S.C. |
| | * § 1491(b)(1) (2006); Veterans |
| **CS-360, LLC,** | * Benefits, Health Care, and |
| | * Information Technology Act of |
| Plaintiff, | * 2006, Pub. L. No. 109-461, |
| | * §§ 502-03 (codified at 38 U.S.C. |
| v. | * §§ 8127-28 (2006); service |
| | * disabled veteran-owned small |
| **THE UNITED STATES,** | * business set-aside; standing; |
| | * eligibility of bidder to participate |
| Defendant. | * by submitting offer when bidder |
| | * removed from database due to |
| * * * * * * * * * * * * * * * * * * * * * * | * protest in unrelated procurement |
| | in which bidder was not |
| | awardee; eligibility to bid under |
| | 38 C.F.R. § 74.2 (2010). |

Ralph C. Thomas, III, McLean, VA, for plaintiff. Bryan R. King, Barton Baker Thomas & Tolle, LLP, McLean, VA, of counsel.

Michelle R. Milberg, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Tony A. Ross, Staff Attorney, Department of Veterans Affairs, Office of Regional Counsel-Region 3, Glen Bernie, MD, and Patricia Trujillo, Staff Attorney, Department of Veterans Affairs, Washington, DC, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This pre-award bid protest is before the court after argument on defendant's motion to dismiss on jurisdictional grounds and the parties' cross-motions for judgment on the

---

1/ This opinion originally was filed under seal on September 7, 2010. By ¶ 2 the parties were requested to notify the court of any redactions. The redactions requested are denoted by brackets.

administrative record. CS-360, LLC ("plaintiff"), a self-represented service disabled veteran-owned small business ("SDVOSB") contracting firm, seeks permanently to enjoin the Department of Veterans Affairs (the "DVA" or "VA") from denying plaintiff a contract award for an emergency electrical system upgrade at the VA Maryland Health Care System at the VA Medical Center in Perry Point, Maryland (the "Project"), on the ground that plaintiff is not listed on the DVA's online Vendor Information Pages (the "VIP") database. On April 30, 2010, the DVA sustained against plaintiff a status protest in an unrelated procurement, and plaintiff was removed from the VIP database. Plaintiff contends that it has satisfied the DVA's concerns related to its SDVOSB status and charges that the DVA unreasonably delayed re-listing plaintiff on the VIP database. On July 30, 2010, the DVA acknowledged that plaintiff resolved its earlier concerns, but concluded on other grounds that plaintiff is ineligible for SDVOSB status, a prerequisite for inclusion in the VIP database and for contract award. The issue presented is whether the court is divested of subject matter jurisdiction because plaintiff lacks standing or, alternatively, because the DVA's July 30, 2010 letter moots plaintiff's claim.

## FACTS

The administrative record ("AR") is the source of the following facts, unless otherwise noted. The court also draws on several agency documents that the parties provided with their briefs, which were not included in the administrative record.

I. Background

1. The VIP database and SDVOSB contracts

The Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, §§ 502-03 (codified at 38 U.S.C. §§ 8127-28 (2006)), was enacted to increase contracting opportunities for service-disabled veteran and veteran-owned qualified small businesses. See 38 U.S.C. § 8127(a). Accordingly, the DVA sets aside certain contracts for SDVOSB concerns. See id. §§ 8127-28. The DVA keeps an online database of qualified SDVOSBs at its VIP website, www.VetBiz.gov. See id. § 8127(f) ("[T]he Secretary shall maintain a database of small business concerns owned and controlled by veterans and the veteran owners of such business concerns."); 48 C.F.R. 2/ § 804.1102 (2010) (providing VIP online database).

---

2/ The parties did not use the designation "FAR" for C.F.R., and the court follows suit. See infra note 2.

Until January 1, 2012, in order to be awarded a contract, an otherwise qualified SDVOSB must be listed in the VIP database.  See id. § 8127(e) ("A small business concern may be awarded a contract under this section only if the small business concern and the veteran owner of the small business concern are listed in the database of veteran-owned businesses maintained by the Secretary under subsection (f)."); 48 C.F.R. § 804.1102 ("Prior to January 1, 2012, all VOSBs and SDVOSBs must be listed in the VIP database, available at http://www.VetBiz.gov, and also must be registered in the Central Contractor Registration (CCR) (see 48 CAR subpart 4.11) to receive contract awards under VA's Veteran-owned Small Business prime contracting and subcontracting opportunities program.").  Also until December 31, 2011, an applicant can self-represent its status as an SDVOSB in the VIP database.  See 48 C.F.R. § 819.7003(b) (2010) ("At the time of submission of offer, the offeror must represent to the contracting officer that it is a–(1) SDVOSB concern or VOSB concern; . . . and (3) Verified for eligibility in the VIP database."). 3/

After December 31, 2011, the regulations require that an applicant be "listed as verified" in the VIP database. 48 C.F.R. § 804.1102 ("After December 31, 2011, all VOSBs, including SDVOSBs, must be listed as verified in the VIP database, and also must be registered in the CCR to be eligible to participate in order to receive new contract awards under this program.").  The Center for Veterans Enterprise (the "CVE"), a division of the DVA, evaluates applications for inclusion in the VIP database to verify whether an applicant satisfies the eligibility requirements to be listed as a SDVOSB.  See 38 C.F.R. § 74.11(a) (2010) ("The Director, Center for Veterans Enterprise, is authorized to approve or deny applications for VetBiz VIP Verification.  The CVE will receive, review and evaluate all VetBiz VIP Verification applications.").  The CVE has authority to remove from the VIP database a firm "found to be ineligible due to an SBA protest decision or other negative finding," and the firm will not be eligible to participate in the 38 U.S.C. § 8127 program.  38 C.F.R. § 74.2(e) (2010).  "Once an application, a request for reconsideration, or an appeal to a cancellation notice, as applicable, has been denied, the applicant or participant shall be required to wait for a period of 6 months before a new application will be processed by CVE."  38 C.F.R. § 74.14 (2010).

An interested offeror bidding on a procurement may challenge another offeror's listing status as an SDVOSB in the VIP database by filing a protest with the VA Office of Small and Disadvantaged Business Utilization (the "OSDBU").  See 48 C.F.R. § 819.307(c) (2010).

---

3/  The regulations define an SDVOSB as having "the same meaning as defined in the Federal Acquisition Regulation (FAR) part 2.101, except for acquisitions authorized by 813.106 and subpart 819.70.  These businesses must then be listed as verified on the Vendor Information Pages (VIP) database at http://www.vetbiz.gov."  48 C.F.R. § 802.101 (2010).

Pending an interagency agreement with the Small Business Administration (the "SBA"), the Executive Director of the OSDBU decides protests of SDVOSB status raised by either another offeror or the contracting officer.  Id.  His decision is final.  Id.

2.  Pre-solicitation

In November 2009 plaintiff submitted to the CVE its application for inclusion in the VIP database.  Pl.'s Br. filed Aug. 6, 2010, at 1.  "While its application was pending," plaintiff self-certified as an SDVOSB "so that it would be listed on the VIP" database.  Id.; see also Compl. filed July 13, 2010, ¶ 11.  At no time prior to the filing of this bid protest had the CVE verified plaintiff's status as an SDVOSB.

Prior to the procurement at issue in the instant matter, plaintiff bid on another, unrelated SDVOSB set-aside DVA procurement (the "protested procurement") and was selected for the award as the low bidder.  Compl. ¶ 11; Pl.'s Br. filed Aug. 6, 2010, at 1.  Another interested offeror bidding on the protested procurement challenged plaintiff's SDVOSB status in the VIP database by filing a status protest with the DVA's OSDBU.  On April 30, 2010, the Executive Director of the OSDBU sustained the status protest, determining that plaintiff did not qualify as a SDVOSB.  The OSDBU found that plaintiff's Operating Agreement potentially gave non-service disabled veterans ("SDV") control of the company, in violation of 38 C.F.R. § 74.4(f)(1), (f)(2)(ii) (2010) (requiring veteran control of a board of directors, of a company, and any executive committee).  See Pl.'s Br. filed July 13, 2010, Ex. 2 at 5.  The OSDBU's Executive Director, Timothy J. Foreman, explained:

> Here, non-veterans can join with a SDV to override the control of the other SDV.  Further, the Operating Agreement provides no requirements that both SDVs be present to establish a quorum of the Executive Committee.  Therefore, if one SDV were absent, the other three members could vote to override the control of the remaining SDV.  Therefore, it cannot be reasonably determined based on the documentation submitted that SDVs control the company.  In the absence of clear and sufficient evidence supporting your claim to SDVOSB status, VA has no choice but to go forward and determine that the firm is ineligible.

Id.  Plaintiff was disqualified from the protested procurement and was removed from the VIP database.

In response, plaintiff amended its Operating Agreement in order to overcome the OSDBU's objections.  See Pl.'s Br. filed July 13, 2010, Ex. 3; Pl.'s Br. filed Aug. 6, 2010, at 1.  On May 6, 2010, plaintiff sent the OSDBU "a red-line Operating Agreement indicating

4

ory

that it had changed its Operating Agreement to conform with the views of the VA." Pl.'s Br. filed July 13, 2010, at 6.  Plaintiff received no response.  On May 12, 2010, plaintiff wrote the OSDBU a second time, attaching a copy of its revised Operating Agreement and stating that plaintiff's president, Walter A. Davis, was now the single SDV fifty-one percent majority owner of the company and would make all management decisions.  See id., Ex. 4. No response was forthcoming. On May 21, 2010, plaintiff again wrote the OSDBU, this time requesting a determination that plaintiff had "overcome the reasons for the initial ruling of ineligibility" and requesting to be placed back on the VIP database.  Id., Ex. 5 at 2.  To date, the OSDBU has not responded to plaintiff's requests.

On July 30, 2010, after the instant protest was filed, the CVE ruled on plaintiff's application for SDVOSB status verification.  See Def.'s Br. filed Aug. 19, 2010, Ex. 1 at 1. Its decision cited the verification requirements of 38 C.F.R. Part 74 and denied plaintiff's application to be placed on the VIP database.  Id.  The CVE acknowledged that "the issue upon which the status protest was upheld concerning the management of the firm, at least on paper, has been corrected."  Id. at 1-2.  However, following a site examination of plaintiff's principal place of business, review of plaintiff's application for VIP verification, and other documents submitted by plaintiff—including documents submitted in response to the status protest—the CVE found other "deeper organizational structural flaws [that] are fatal to the application" because they "materially affect control by the SDV" in contravention of the control requirements of 38 C.F.R. Part 74.  Id.  The CVE explained that another corporation, B&R Construction, provided all start-up financing to plaintiff and provides all office space, resources, support, and technical personnel to plaintiff, all of which is reimbursed by plaintiff to B&R Construction.  Id. at 2-3.  Thus, plaintiff "cannot perform any contract without B&R['s] agreeing and providing very nearly all the resources necessary to perform any work."  Id. at 3.  The CVE concluded that plaintiff's SDVOSB status constituted a [
        ].  Id. ("The purpose for creating [plaintiff] was solely to bring to life a SDVOSB for B&R to seek work from VA and possibly other agencies on SDVOSB set-asides.  B&R cannot do this since it is a large business, at least for several NAICS codes.").

3.  The solicitation

On April 23, 2010, the DVA issued a pre-solicitation notice for Solicitation No. VA-245-10-RA-0127 (the "Solicitation").  AR at 1.  The pre-solicitation notice sought "services of a qualified [SDVOSB] to provide all supervision, labor, materials, equipment and connections for the construction/installation materials, equipment, and supervision required for Project #R512-10-317 Emergency Electrical System Upgrade located at VA Maryland Health Care System at the Perry Point VA Medical Center Perry Point, MD (Cecil County)." AR at 2.  The pre-solicitation notice specified that all interested bidders "MUST be registered in the . . . VetBiz Vendor Information Pages (VIP) . . . prior to bid opening."  Id.  On June

5

9, 2010, plaintiff filed a notice of complaint in the United States Court of Federal Claims, protesting the terms of this notice. Pl.'s Br. filed Aug. 6, 2010, at 1. On June 11, 2010, DVA amended the pre-solicitation notice to read "[a]ll interested parties MUST be registered in the . . . VetBiz Vendor Information Pages (VIP) . . . prior to award." AR at 687; Def.'s Br. filed July 30, 2010, at 5 n.6. Consequently, plaintiff withdrew its notice of complaint.

On May 17, 2010, the VA Maryland Health Care System issued the Solicitation, with bids due on June 17, 2010, at the Perry Point VA Medical Center. The procurement was a 100-percent SDVOSB set-aside pursuant to 38 U.S.C. § 8127. On June 11, 2010, in addition to amending the pre-solicitation notice, the DVA also amended the Solicitation, adding to its first page: "In accordance with VAAR 804.1102, all SDVOSB and VOSB contractors and subcontractors must be listed in Vendor Information Pages (VIP) database at the Center for Veteran Enterprise (CVE) Web Portal (VetBiz), http://www.vetbiz.gov, prior to award." AR at 687.

In accordance with the Solicitation, plaintiff submitted its bid on June 17, 2010, and was the lowest bidder. Compl. ¶ 23; Transcript of Proceedings, CS-360, LLC v. United States, No. 10-457C, at 10 (Fed. Cl. July 14, 2010) ("Tr."). In a letter dated June 29, 2010, the contracting officer rejected plaintiff's bid. AR at 1008. Citing 38 U.S.C. § 8127(e) and 48 C.F.R. § 804.1102, the contracting officer explained that because plaintiff was not listed in the VIP database it was ineligible for the contract award. Id. ("Accordingly, since CS-360 is not currently listed in the VIP database, it is the determination of the VA that CS-360 is ineligible for award and its bid is hereby rejected."). The contracting officer attached to his June 29, 2010 notice of rejection of bid print-outs of the VIP database, showing that plaintiff was not included in the database list. Id.

On July 13, 2010, plaintiff filed its Complaint for Injunctive and Declaratory Relief seeking to "temporarily, preliminarily, and permanently enjoin the VA from denying a contract award to Plaintiff on grounds that the firm is not listed on the [VIP] database." Compl. ¶ 2. The complaint alleges two counts: first, that the DVA's failure to re-list plaintiff in the VIP database after plaintiff amended its Operating Agreement was arbitrary, capricious and contrary to law, id. ¶ 25; and second, that an "unreasonable length of time" has lapsed since plaintiff first notified the DVA that it amended its Operating Agreement without the DVA's having relisted plaintiff on the VIP database, in violation of 48 C.F.R. § 819.307(c). Id. ¶¶ 27-32. Also on July 13, 2010, plaintiff filed a Motion for Preliminary Injunction and Application for Temporary Restraining Order ("TRO"). Plaintiff's complaint requests the court to preliminarily enjoin the DVA from awarding the contract or proceeding with

contract performance; 4/declare that plaintiff has demonstrated to the DVA that it overcame the DVA's reasons for determining plaintiff ineligible for SDVOSB status; direct the DVA to re-list plaintiff on the VIP database; and direct the DVA to award the contract to plaintiff. 5/

     A hearing on plaintiff's application for a TRO was held on July 14, 2010.  See Order entered July 13, 2010.  At the hearing defendant and agency counsel agreed to postpone award of the contract through September 7, 2010.  See Tr. at 14, 22, 39.  Based on this representation, the court denied plaintiff's application as moot.  See Order entered July 14, 2010, ¶ 1.  On July 20, 2010, defendant filed Defendant's Unopposed Motion for a Protective Order, which the court granted.  See Order entered July 21, 2010.  On July 30, 2010, defendant filed its motion to dismiss and motion for judgment on the administrative record, to which plaintiff filed its response and cross-motion for judgment on the administrative record on August 6, 2010.  Defendant replied on August 19, 2010, and plaintiff sur-replied on August 27, 2010.  Oral argument was heard on the parties' cross-motions on August 31, 2010.

     Defendant challenges this court's subject matter jurisdiction on grounds that plaintiff lacks standing to bring its complaint because it was ineligible to bid on the Solicitation in the first instance or that the CVE's July 30, 2010 determination letter renders the matter moot. For the same reasons, defendant also contends that plaintiff's claim should be dismissed for failure to state a claim for which relief can be granted.  Finally, defendant argues that judgment on the administrative record is warranted because the contracting officer's decision to reject the bid was rational.  Because the court agrees with defendant that this court lacks subject matter jurisdiction over plaintiff's claims on standing and mootness grounds, the court need not consider defendant's alternative arguments.

---

    4/  In its Motion for Preliminary Injunction and its Application for a TRO, plaintiff sought to enjoin the DVA from awarding the contract to any other offeror other than plaintiff.

    5/  At the hearing on July 14, 2010, the court stated that it is not within the court's jurisdiction to order the DVA (or CVE) to place plaintiff on the database.  See Def.'s Br. filed July 30, 2010, at 7 n.9.  Defendant also correctly argues that it is not within this court's power to order the contract be awarded to plaintiff.  See id. at n.10 (citing United Int'l Investig. Servs., Inc. v. United States, 41 Fed. Cl. 312, 323-24 (1998)).  To the extent the court possesses the ability to grant plaintiff equitable relief, the court is only authorized to enjoin award of the contract unless the bidding process is reopened to allow plaintiff the opportunity to participate.

# DISCUSSION

## I.  Subject matter jurisdiction

The United States Court of Federal Claims derives jurisdiction over bid protests from the Tucker Act, 28 U.S.C. § 1491(b)(1) (2006).  Specifically, the Court of Federal Claims has jurisdiction over actions by an "interested party" objecting to (1) a solicitation by a federal agency for bids or proposals for a proposed contract; (2) a proposed award or the award of a contract; or (3) any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement.  28 U.S.C. § 1491(b)(1).  Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  The court may "award any relief that the court considers proper, including declaratory and injunctive relief."  28 U.S.C. § 1491(b)(2).

### 1.  Standing

"[S]tanding is a threshold jurisdictional issue."  Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002).  Every plaintiff must have standing to invoke the court's jurisdiction over a bid protest.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing].").  "'The Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III.'"  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (quoting Anderson v. United States, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)).  In this bid protest, the question of standing "is framed by 28 U.S.C. § 1491(b)(1), which . . . imposes more stringent standing requirements than Article III."  Id.  Section 1491(b)(1) provides, in pertinent part:

> [T]he United States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  The pivotal element of standing in a bid protest is whether a protester qualifies as an "interested party" under § 1491(b)(1).  See Weeks, 575 F.3d at 1359; see also Am. Fed'n of Gov't Emps. v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("AFGE") (holding that "interested party" under Tucker Act is construed in accordance with Competition in Contracting Act, 31 U.S.C. § 3551(2) (2000)).

The United States Court of Appeals for the Federal Circuit defines "interested party" in § 1491(b)(1) as "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract [by the Government]." AFGE, 258 F.3d at 1302. This statutory definition imposes a two-part burden to establish standing: (1) plaintiff must show that it is an actual or prospective bidder, and (2) plaintiff must show that it possesses a direct economic interest. Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). To satisfy the second prong, the protester must show that it was "prejudiced by a significant error in the procurement process." Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1378 (Fed. Cir. 2009); see also Weeks Marine, 575 F.3d at 1360-61 (equating showing of economic interest with showing of prejudice); Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (explaining that "the question of prejudice goes directly to the question of standing"); Myers, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of standing."). "A party has been prejudiced when it can show that but for the error, it would have had a substantial chance of securing the contract." Labatt Food Serv., 577 F.3d at 1378; see also Rex Serv. Corp., 448 F.3d at 1308 ("To prove a direct economic interest as a putative prospective bidder, it [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract.") (citing Myers, 275 F.3d at 1370; Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). 6/

---

6/ While not argued by the parties, the court notes that in Weeks Marine the Federal Circuit distinguished the substantial chance test used in post-award bid protests from pre-award solicitation challenges. See 575 F.3d at 1361 ("We have not had occasion to discuss what is required to prove an economic interest, and thus prejudice, in a case such as this, where a prospective bidder/offeror is challenging a solicitation in the pre-award context."). The court reasoned that in the context of a pre-award solicitation challenge, it is difficult for a prospective bidder to make the normal showing of prejudice because "there have been neither bid/offers, nor a contract award[;] [h]ence, there is no factual foundation for a 'but for' prejudice analysis." Id. The court concluded that the appropriate standard to evaluate standing in such a pre-award situation was whether the protester can demonstrate "a non-trivial competitive injury which can be redressed by judicial relief." Id. at 1362 (explaining that this standard "strikes the appropriate balance between the language of § 1491(b)(1) . . . and Article III standing requirements").

It is not clear that the Federal Circuit in Weeks Marine intended that this standard apply to all subsequent pre-award bid protests. The court appears to limit its pre-award standing standard to "a case such as this," where there were no bids or offers submitted. Id. at 1361; see also id. at 1362 (stating that "the standard applied by the Court of Federal Claims in this case strikes the appropriate balance" (emphasis added)). Here, by contrast,

1)  <u>The parties' arguments</u>

Defendant challenges plaintiff's standing on the ground that plaintiff cannot show prejudice because it was not a qualified bidder.  Defendant reasons that, pursuant to 48 C.F.R. § 819.307(c)(3) and 38 C.F.R. § 74.2(e), once the OSDBU sustained the prior status protest, plaintiff's name was removed from the VIP database, thereby rendering plaintiff ineligible to participate in the 38 U.S.C. § 8127 program.  Because plaintiff could not participate in the program, plaintiff was prohibited by law from submitting a bid on the Solicitation.  <u>See</u> Def.'s Br. filed July 30, 2010, at 17 (<u>citing</u> 48 C.F.R. § 819.307(c)(3); 38 C.F.R. § 74.2(e)).  In order to be awarded a contract under 38 U.S.C. § 8127(e), plaintiff must be listed in the VIP database.  Therefore, plaintiff "had no chance of receiving the award, let alone a substantial chance," and thus lacks the economic interest required to establish standing in this court.  <u>Id.</u>

Plaintiff counters that the operative laws and DVA policy establish that a small business concern may be eligible for an SDVOSB set-aside contract if it is listed on the VIP database on the date of the award, which in this case has been stayed.  Therefore, plaintiff is still eligible to bid on the Solicitation.

Plaintiff focuses on the DVA's June 11, 2010 amendment to the pre-solicitation notice requirement that bidders be registered in the VIP database prior to bidding and places great emphasis on the clarification that bidders must be registered in the VIP database prior to award.  At oral argument plaintiff represented that the amendment was specifically responsive to plaintiff following the April 30, 2010 status protest.  <u>See also</u> Pl.'s Br. filed

---

<u>6/</u>  (Cont'd from page 9.)

offers were submitted and plaintiff was the lowest bidder.  <u>See</u> Compl. ¶ 23.  In <u>Weeks Marine</u> the protester challenged the solicitation's use of negotiated, rather than sealed, bidding, as well as its use of indefinite duration indefinite quantity multiple-award task order contracts.  <u>Weeks Marine</u>, 575 F.3d. at 1355.  In the case <i>sub judice</i>, plaintiff is not challenging the terms of the Solicitation, but alleges a discrete injury based on the DVA's application of the SDVOSB regulations to plaintiff.

The traditional "substantial chance" test, therefore, seems more appropriate given the facts of this case.  The standard applied by the Federal Circuit in <u>Weeks Marine</u> is <i>sui generis</i> to that case.  The court observes, however, that applying the standard adopted in <u>Weeks Marine</u> would not alter the outcome of the court's determination.  As will be explained in further detail, <i>infra</i>, under either theory, the court concludes that plaintiff lacks standing.

10

Aug. 27, 2010, at 4 ("Defendant agreed to amend the Solicitation to its current wording in order to allow Plaintiff the opportunity to bid.").  Plaintiff proffers that it withdrew its June 9, 2010 notice of complaint only because it construed the amendment as authorization for plaintiff to bid on the Solicitation.  Further, plaintiff cites a Government Accounting Office ("GAO") decision in Corners Construction, B-402465, 2010 CPD ¶ 100, 2010 WL 1645836 (Comp. Gen. April 23, 2010), for the proposition that the "VA has itself has argued that under the applicable statutes and regulations, a small business concern is only eligible for award under a SDVOSB set-aside if it is listed in the VIP on the *date of award*."  Pl.'s Br. filed Aug. 6, 2010, at 3. 7/  In light of the DVA's amendment to the pre-solicitation notice and the DVA's argument in Corners Construction, plaintiff concludes that "an offeror has until the date of award to be qualified on the VIP."  Pl.'s Br. filed Aug. 6, 2010, at 3.

Additionally, plaintiff points to the CVE's July 30, 2010 acknowledgment that "the issue upon which the status protest was upheld concerning the management of the firm, at least on paper, has been corrected," Def.'s Br. filed Aug. 19, 2010, Ex. 1 at 1-2, as definitive proof that plaintiff has cured the specific defects identified by the OSDBU as grounds for sustaining the status protest and removing plaintiff from the VIP database.  In light of the amendment to pre-solicitation notice and the DVA's own interpretation of the statute in Corners Construction, plaintiff disputes that it was ineligible to bid on the Solicitation in the first instance.  Pl.'s Br. filed Aug. 27, 2010, at 4-5.

Plaintiff contends that it has met the requirements of 48 C.F.R. § 819.307(c)(3) "by demonstrating to the VA that it had overcome the problem with the supermajority clause in its operating agreement."  Pl.'s Br. filed Aug. 6, 2010, at 4.  Plaintiff urges that it possesses standing to bring this protest because none of the issues justifying its removal from the VIP database remain and, therefore, it should be reinstated to the VIP database.  Further, the VA unreasonably delayed re-listing plaintiff on the VIP database after plaintiff demonstrated to the VA that it had taken corrective action.  The DVA's delay prejudiced plaintiff because, but for the delay in re-listing plaintiff on the VIP database, plaintiff would have a substantial chance of receiving the award given that it is the low bidder and the contract has not yet been awarded.  Id. at 5.

---

7/  In Corners Construction the VA argued that, because of the references to "awards" in 38 U.S.C. § 8127(e) and 48 C.F.R. § 804.1102, "a small business concern is eligible for award under a VA SDVOSB set-aside only if it is listed in the database on the date of award," which justified the denial of an award to a concern that was in the VIP database at the time of bid opening, but was removed prior to the award.  B-402465, 2010 CPD ¶ 100, 2010 WL 1645836, at *1.

Alternatively, plaintiff proffers that the regulations relied on by defendant are either inapplicable to the facts of this case or permit plaintiff to bid on the Solicitation. First, 38 C.F.R. § 74.2(e) is specific to SBA protest decisions, whereas the eligibility determination in this case was made by the DVA, not the SBA. Second, 48 C.F.R. § 819.307(c)(3) applies to status protests where the contract already has been awarded. "If the Executive Director sustains a service-disabled veteran-owned or veteran-owned small business status protest and the contract has already been awarded . . . ." 48 C.F.R. § 819.307(c)(3) (emphasis added). The implication of the regulation's specific reference to contracts already awarded suggests that, in cases where no prior contract award was made to the protested concern, it remains eligible to bid on future procurements. Pl.'s Br. filed Aug. 6, 2010, at 4. Under this construction of the regulation, plaintiff argues that it is still eligible because it was not the awardee under the protested procurement when the OSDBU Executive Director sustained the status protest. Therefore, plaintiff reasons that it is otherwise eligible to continue to bid other SDVOSB solicitations, including the instant one.

    2)  <u>Analysis</u>

Defendant bases its claim that plaintiff has no standing on two regulations, 48 C.F.R. § 819.307(c)(3) and 38 C.F.R. § 74.2(e), which, respectively, acts to bar a purported SDVOSB from bidding on a future procurement if a status protest has been sustained against that bidder and grants the CVE authority to remove the bidder from the VIP database. Defendant argues that the two regulations "go hand in hand" and accuses plaintiff of "parsing" the regulatory scheme by differentiating between being listed on the VIP database, 48 C.F.R. § 804.1102, from the VIP verification application process, 38 C.F.R. § 74.11, in

order to misrepresent its status as an SDVOSB. 8/ Def.'s Br. filed Aug. 19, 2010, at 4-5 (citing Pl.'s Br. filed Aug. 6, 2010, at 8).

"The rules of statutory construction apply when interpreting an agency regulation." Roberto v. Dep't of the Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006). The court begins its analysis of the regulations by "reviewing its language to ascertain its plain meaning." Am. Airlines, Inc. v. United States, 551 F.3d 1294, 1299 (Fed. Cir. 2008). The court may consider the language of other, related regulations to guide its analysis. Roberto, 440 F.3d at 1350. The court will defer to the relevant agency's interpretation of a statute or regulation that is "not clear on its face or does not speak directly to an issue." Am. Airlines, 551 F.3d at 1299-1300 (citing Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984)); see also Roberto, 440 F.3d at 1350 ("[I]f the regulation is silent or ambiguous, the court then gives deference to the agency's own interpretations."). However, when the regulation's text is clear, the court's inquiry ends with the plain meaning. Roberto, 440 F.3d at 1350.

The court agrees in part with plaintiff's construction of 48 C.F.R. § 819.307(c)(3). Defendant argues that plaintiff's interpretation of the regulation "fails to include a situation, such as the one at issue here, where a status protest has already been sustained against an offeror." Def.'s Br. filed Aug. 19, 2010, at 5. Section 819.307(c)(3) provides:

> If the Executive Director sustains a service-disabled veteran-owned or veteran-owned small business status protest and the contract has already been awarded, then the contracting officer cannot count the award as an award to a VOSB or SDVOSB and the concern cannot submit another offer as a VOSB

8/ To be sure, these regulations lack consistency and clarity. Nevertheless, plaintiff is not rewriting the regulations by differentiating between being listed in the VIP database and being verified therein. The regulations make this very distinction. See 48 C.F.R. § 804.1102 ("Prior to January 1, 2012, all . . . SDVOSBs must be listed in the VIP database . . . to receive contract awards . . . . After December 31, 2011, all VOSBs, including SDVOSBs, must be listed as verified in the VIP database . . . to be eligible to participate in order to receive new contract awards under this program."). As explained by the rules promulgated by the DVA, the verification scheme was intended to alleviate concerns for "'pass through' business relationships and the potential for other fraudulent actions." VA Acquisition Regulation: Supporting Veteran-Owned and Service-Disabled Veteran-Owned Small Businesses, 74 Fed. Reg. 64,619, 64,619 (Dec. 8, 2009). Section 804.1102 delays the eligibility requirement that SDVOSBs be listed as verified until after December 31, 2011, "to allow VA time to adequately verify firms." Id. at 64,620.

13

or SDVOSB on a future VOSB or SDVOSB procurement under this part, as
applicable, unless it demonstrates to VA that it has overcome the reasons for
the determination of ineligibility.

48 C.F.R. § 819.307(c)(3). This regulation applies to status protests of successful bidders
to whom "the contract has already been awarded," not merely protests sustained against an
unsuccessful bidder. Id. Nothing in the text suggests a broader application. Indeed, the
VA's own final rule confirms this construction: "Lastly, 819.307 is clarified to explain that
if a SDVOSB or VOSB status protest is granted, if contract award has already been made,
VA will not be required to terminate the award . . . ." VA Acquisition Regulation:
Supporting Veteran-Owned and Service-Disabled Veteran-Owned Small Businesses, 74 Fed.
Reg. 64,619, 64,627 (Dec. 8, 2009) (emphasis added). Defendant's construction of the
regulation to encompass unsuccessful bidders ignores the conjunctive clause "and the
contract has already been awarded," 48 C.F.R. § 819.307(c)(3), which would render
meaningless the immediately succeeding clause, "then the contracting officer cannot count
the award as an award to a VOSB or SDVOSB," id. This result the court cannot sanction,
as it "would contravene the 'longstanding canon of statutory construction that terms in a
statute should not be construed so as to render any provision of that statute meaningless or
superfluous.'" Roche v. Merit Sys. Prot. Bd., 596 F.3d 1375, 1380 (Fed. Cir. 2010) (quoting
Beck v. Prupis, 529 U.S. 494, 506 (2000)). The court must also follow the "cardinal rule that
statutory language must be read in context since a phrase gathers meaning from the words
around it." Hawkins v. United States, 469 F.3d 993, 1001 (Fed. Cir. 2006) (citation omitted)
(internal quotation marks omitted). The court concludes that, by its plain terms, 48 C.F.R.
§ 819.307(c)(3) only applies to status protests sustained against firms that already have been
awarded a contract.

Applying this construction to the facts of this case, it becomes clear that the regulation
is inapplicable. When the OSDBU sustained the status protest against plaintiff on April 30,
2010, by plaintiff's own admission, see Pl.'s Br. filed Aug. 6, 2010, at 4, the protested
procurement had not been awarded to plaintiff. Nothing in the regulation's text supports
applying its penalty clause—barring sustained protested firms from future bids—to an
anomalous situation where, as here, the sustained protested firm was an unsuccessful bidder.
Therefore, 48 C.F.R. § 819.307 does not bar plaintiff from bidding on the Solicitation.

For the same reason, however, plaintiff cannot take refuge in the regulation's safe
harbor provision, "unless it demonstrates to VA that it has overcome the reasons for the
determination of ineligibility." 48 C.F.R. § 819.307(c)(3). The regulation simply does not
apply to a sustained status protest regarding an offeror's prior, unsuccessful bid. Even
though the regulation does not bar plaintiff from bidding, that does not mean that, by
negative implication, the regulation permits plaintiff to bid on future procurements after the

CVE's determination of ineligibility for SDVOSB status.  In other words, § 819.307(c)(3) does not apply to this case.  9/

Defendant argues that the DVA's amendment to the pre-solicitation notice to conform it to 38 U.S.C. § 8127(e) and the DVA's own interpretation of that statute in Corners Construction confirm that plaintiff has until the actual award of the contract to be listed in the VIP database.  Plaintiff insists that, in light of the CVE's acknowledgment that plaintiff cured the defects identified in the OSDBU's April 30 letter, nothing prevents it from being placed back on the VIP database prior to the contract's award.  The court concludes, however, that notwithstanding the CVE's observations pertinent to the OSDBU's status protest, plaintiff is ineligible to bid by virtue of 48 C.F.R. § 819.7003(a) and 38 C.F.R. § 74.2(e).

38 C.F.R. Part 74 and 48 C.F.R. Part 819, when read together, establish a comprehensive regulatory scheme to ensure verification of SDVOSB status in order to prevent unscrupulous bidders from misrepresenting their veteran- or service-disabled ownership status.  In so doing, DVA is fulfilling its verification obligation according to congressional mandate, as prescribed by 38 U.S.C. § 8127(f)(4) ("In maintaining the database, the Secretary shall carry out at least the following two verification functions:  (A) Verification that each small business concern listed in the database is owned and controlled by veterans. (B) In the case of a veteran who indicates a service-connected disability, verification of the service-disabled status of such veteran.").  Defendant correctly contends that these two provisions cannot be considered in isolation.  Each provision is examined in turn.

------

9/  Indeed, 48 C.F.R. § 819.307(c) is an interim rule that governs until an interagency agreement is reached between the DVA and the Small Business Administration ("SBA").  See VA Acquisition Regulation: Supporting Veteran-Owned and Service-Disabled Veteran-Owned Small Businesses, 74 Fed. Reg. at 64,627 ("At section 819.307 of the proposed rule, VA included a provision that VA would utilize SBA to consider and decide SDVOSB and VOSB status protests.  This requires VA and SBA to execute an interagency agreement pursuant to the Economy Act, 31 U.S.C. [§] 1535.  Negotiations of this interagency agreement have not yet been finalized.  Therefore, VA has amended section 819.307 with an interim rule that provides that VA's Executive Director, OSDBU shall consider and decide SDVOSB and VOSB status protests, and provides procedures there for, until such time as the interagency agreement is executed by the agencies.").  Defendant advised the court that this interagency agreement has not been reached.

48 C.F.R. § 819.7003 sets forth the eligibility requirements for SDVOSBs and provides that such eligibility is governed by certain SBA regulations, "except where expressly directed otherwise by . . . 38 C.F.R. verification regulations for SDVOSBs and VOSBs." Id. § 819.7003(a).  Moreover, this regulation also requires an offeror bidding on a solicitation to represent to the contracting officer that the offeror is "[v]erified for eligibility in the VIP database." Id. § 819.7003(b)(3) (emphasis added).  38 C.F.R. § 74.2, in turn, lists "the eligibility requirements for VIP verification."  VA Acquisition Regulation: Supporting Veteran-Owned and Service-Disabled Veteran-Owned Small Businesses, 74 Fed. Reg. at 64,619.  Section 74.2(e) provides:

> U.S. Small Business Administration (SBA) Protest Decisions.  Any firm registered in the VetBiz VIP database that is found to be ineligible due to an SBA protest decision or other negative finding will be immediately removed from the VetBiz VIP database.  Until such time as CVE receives official notification that the firm has proven that it has successfully overcome the grounds for the determination or that the SBA decision is overturned on appeal, the firm will not be eligible to participate in the 38 U.S.C. [§] 8127 program.

38 C.F.R. § 74.2(e) (emphasis added).  Plaintiff disputes the applicability of 38 C.F.R. § 74.2(e) on the ground that it is specific to SBA decisions.  See Pl.'s Br. filed Aug. 6, 2010, at 5 ("The title of the clause alone speaks to its inapplicability . . . .").  However, a regulation is not interpreted merely according to its title.  See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, __, 128 S. Ct. 2326, 2336 (2008) ("To be sure, a subchapter heading cannot substitute for the operative text of the statute."); Pa. Dep't of Corrections v. Yeskey, 524 U.S. 206, 212 (1998) (explaining that title of statute does not limit plain meaning of its text).  As the text of the regulation explicitly provides, a firm will be removed from the VIP database if it is found to be ineligible due to "[an]other negative finding," not only an SBA decision.  Moreover, the CVE's authority to remove a bidder upon a negative finding by the DVA and bar that bidder from bidding on future procurements is not so readily discounted, and the court declines to do so now.  48 C.F.R. § 819.7003 expressly conditions eligibility for SDVOSB status on satisfying the verification requirements of 38 C.F.R. Part 72.  Upon plaintiff's application, which proceeded in tandem with the Solicitation, the CVE removed plaintiff from the VIP database on April 30, 2010, thereby rendering plaintiff ineligible to participate in the Solicitation.  Nothing in the regulatory scheme permits a firm to represent itself as an SDVOSB once it has been removed from the VIP database.  To do so would turn the DVA's verification process on it head.  38 U.S.C. § 8127(e) conditions award of an SDVOSB contract upon inclusion in the VIP database.  Because plaintiff is ineligible to be listed therein, it cannot show a substantial chance of securing the contract and, therefore, cannot establish prejudice.  Without such a showing, plaintiff is not an

interested party for Tucker Act purposes and lacks standing to bring its claim in the Court of Federal Claims.

    2. <u>Mootness</u>

    As with standing, the mootness doctrine originates from the "case or controversy" requirement of Article III of the United States Constitution.  <u>Gerdau Ameristeel Corp. v. United States</u>, 519 F.3d 1336, 1340 (Fed. Cir. 2008) (citing <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984); <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971)).  Federal courts are permitted only to entertain matters in which there is an ongoing justiciable issue.  <u>See</u> <u>NEC Corp. v. United States</u>, 151 F.3d 1361, 1369 (Fed. Cir. 1998).  As such, mootness implicates the court's subject matter jurisdiction.  <u>Id.</u>  ("If a case becomes moot it no longer presents a justiciable controversy over which a federal court may exercise jurisdiction.").  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969).  "Thus, to avoid dismissal for mootness, an actual controversy must remain at all stages, not merely at the time the complaint is filed."  <u>Gerdau Ameristeel</u>, 519 F.3d at 1340.

    A case will be dismissed as moot if an intervening event during its pendency "renders it impossible for [the] court to grant any effectual relief."  <u>Cyprus Amax Coal Co. v. United States</u>, 205 F.3d 1369, 1372 (Fed. Cir. 2000) (holding tax refund suit not moot despite plaintiff's subsequent compliance with tax refund statute because plaintiff could potentially recover additional taxes under Tucker Act rather than under tax refund claim); <u>see also</u>  15 <u>Moore's Federal Practice</u> § 101.93[2] (Matthew Bender 3d ed.) ("A claim may . . . be rendered moot because the plaintiff, as a result of some intervening factual event, has lost a present right to be vindicated or no longer has a stake or interest in the outcome of the litigation.").  As explained by the United States Supreme Court, "jurisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that 'there is no reasonable expectation  . . .' that the alleged violation will recur, and, (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979) (citations omitted).  "When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law."  <u>Id.</u>

    Defendant argues that, if the issue in plaintiff's bid protest is whether the CVE unreasonably delayed restoring plaintiff to the VIP database, the CVE's July 30, 2010 determination that plaintiff otherwise is ineligible to be considered an SDVOSB overtakes this claim and renders the matter moot.  <u>See</u> Def.'s Br. filed Aug. 19, 2010, at 8 (citing <u>Tech. Innovation, Inc. v. United States</u>, 93 Fed. Cl. 276, 279 (2010) ("[A] case will be considered

moot where it no longer presents a 'live' controversy or the parties no longer have a 'legally cognizable interest in the outcome' of the litigation.") (citations omitted)).  Even assuming that any delay occurred in making this determination, defendant dismisses it as harmless. According to defendant, the CVE determination establishes conclusively that plaintiff would be ineligible to bid on the solicitation and could not receive the award.  Id. (citing 48 C.F.R. § 819.307(c)(3)).

Defendant's formulation of the issue is correct.  The lynchpin of plaintiff's argument is that the DVA unreasonably delayed restoring plaintiff to the VIP database.  However, in its July 30, 2010 determination letter, the CVE explained that it found "plain evidence" showing that plaintiff's SDVOSB application was part of a [

].  Def.'s Br. filed Aug. 19, 2010, Ex. 1 at 5 ("No rational basis exists to conclude otherwise.").  10/ Assuming, *arguendo*, that the court were to grant injunctive relief and order that bidding on the Solicitation be reopened, under 38 C.F.R. § 74.2's verification regime, the CVE's subsequent determination of ineligibility would provide an independent ground to remove plaintiff from the VIP database and thus prevent plaintiff from participating in the Solicitation.  See 38 C.F.R. § 74.2(e).  Thus, even if plaintiff were eligible to bid, plaintiff would still be barred statutorily from receiving an award.  See 38 U.S.C. § 8127(e).  The July 30, 2010 CVE determination letter has the practical, and legal, effect of rendering the court unable to provide plaintiff any effective relief.  For this reason, plaintiff's claim is moot.

The court concludes that plaintiff lacks standing to bring its claim in the Court of Federal Claims and, alternatively, that the CVE's July 30, 2010 status determination letter moots plaintiff's claims.  Therefore, this court is divested of subject matter jurisdiction.

## CONCLUSION

Accordingly, based on the foregoing,

1.  Defendant's motion to dismiss for lack of subject matter jurisdiction is granted, and plaintiff's cross-motion is denied.  The Clerk of the Court shall dismiss the complaint without prejudice for lack of subject matter jurisdiction.

2.  By September 14, 2010, the parties shall identify by brackets any material subject to redaction before the opinion issues for publication.

---

10/  The court stresses that this determination is not the subject of its review and it is not commenting on the merits of this determination.

18

**IT IS SO ORDERED.**

No costs.

/s/ Christine O.C. Miller

_____

**Christine Odell Cook Miller**
Judge